# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BMO Harris Bank N.A., | Case No. 22-cv-00435 (KMM/TNL) |
| Plaintiffs, | |
| v. | **ORDER** |
| Kenneth Kuskie, John Stedman, Susan Stedman and Curtis A. Hayes, | |
| Defendants. | |
| v. | |
| Capitol Sales Company, Inc. | |
| Third-Party Defendant. | |

This case involves a dispute between a bank and individuals affiliated with a company to which the bank loaned money. The bank seeks to recover payments that the company's shareholders and former president received from the company while the business was insolvent. The bank also accuses the former president of engaging in a fraudulent scheme to make the company appear more successful than it actually was to secure financing from the bank. The shareholders each filed motions to dismiss the bank's complaint. [Dkt. Nos. 61, 76, 51]. The former president seeks indemnification and advancement of legal fees from both the company and its shareholders, who have filed motions to dismiss his claims against them. [Dkt. Nos. 56, 66, 80, 71]. For the reasons stated below, the Court grants the shareholders' motions to dismiss and denies the company's motion to dismiss.

## I.     BACKGROUND

The bank, BMO Harris Bank N.A. ("BMO"), loaned money to Capitol Sales, a company specializing in the distribution of consumer electronics, starting in 2011.  [Am. Compl. ¶¶ 1, 8, Dkt. No. 49].  When BMO filed its complaint, Capitol Sales owed the bank more than $3.2 million.  [*Id.* ¶ 21.]  BMO sued Capitol Sales in a separate case to recover the amount of the defaulted loans.  *See BMO Harris Bank N.A. v. Capitol Sales Co.*, (N.D. Ill.) (No. 22-cv-132).  In April 2022, BMO obtained a default judgment award of $3.3 million against Capitol Sales, which failed to defend against the lawsuit.  *See* Default Judgment Order, BMO Harris Bank N.A. v. Capitol Sales Co., (N.D. Ill. Apr. 20, 2022) (No. 22-cv-132) (Dkt. No. 24).

In this case, BMO has sued the three shareholders of Capitol Sales—Kenneth Kuskie, John Stedman, and Susan Stedman—and its former president and Chief Financial Officer ("CFO"), Curtis Hayes.  BMO asserts that between January 2018 and July 2021, Capitol Sales was at or near insolvency, yet during that period, Mr. Kuskie received $435,000, Mr. Stedman received $355,000, and Ms. Stedman received $355,000 from the company.  [Am. Compl. ¶¶ 30, 67, 104.]  BMO alleges the Capitol Sales board of directors did not approve these payments.  [*Id.* ¶¶ 51, 69, 105.]  According to the Amended Complaint, the shareholders knew or should have known Capitol Sales was insolvent but nonetheless accepted the distributions, making the shareholders liable to return the money under state fraudulent-transfer law (Counts I—IX).  BMO also alleges that the shareholders breached their fiduciary duties to BMO (Count X).

As for Mr. Hayes, BMO seeks to recover the $998,309.44 in compensation he received from Capitol Sales during this same time period as fraudulent transfers under state law (Counts XI–XIII).  BMO asserts that Mr. Hayes, in his role of president and CFO of Capitol Sales, induced the bank to loan the company money by falsely making Capitol Sales appear more solvent than it was.  [*Id.* ¶¶ 152–53.]  Specifically, BMO alleges that Mr. Hayes recorded sales that never occurred, inflated inventory levels and assets, falsified financial records, and sold inventory for his own benefit.  [*Id.* ¶¶ 153, 154, 177.]  BMO alleges Mr. Hayes committed Fraud (Count XV), Conversion (Count XV) and Civil Theft (Count XVI).[1]  Like with the shareholders, BMO also asserts that Mr. Hayes breached his fiduciary duties to BMO (Count X).  Mr. Hayes, in turn, seeks indemnification and advancement of legal fees from both Capitol Sales and the shareholders.

The shareholders filed motions to dismiss both BMO's complaint and Mr. Hayes's crossclaims against them.  Capitol Sales, as a third-party defendant, filed a motion to dismiss Mr. Hayes's claims against it.  In the discussion that follows, this Order first analyzes the viability of the claims brought by BMO and then turns to the claims brought by Mr. Hayes against the shareholders and Capitol Sales.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

---

[1] The Amended Complaint misnumbers the claims, counting Count XI twice.  This order refers to the claims in the correct numerical order, which means Counts XIII–XVI differ from the corresponding section headers in the Amended Complaint.

U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts alleged. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## III.   ANALYSIS OF CLAIMS IN THE FIRST AMENDED COMPLAINT

Although each of the three shareholders filed their own motion to dismiss BMO's complaint, their arguments are essentially the same. They first argue that BMO's complaint fails to state a claim under the Minnesota Uniform Voidable Transactions Act ("MUVTA"), Minn. Stat. §§ 513.41–.51, because shareholder distributions are governed instead by the Minnesota Business Corporation Act ("MBCA"), Minn. Stat. §§ 302A.551-.559, which does not allow BMO to recover from them. Second, they argue that the bank fails to state a claim for breach of fiduciary duty because as shareholders of Capitol Sales, they do not owe a fiduciary duty to its creditors. BMO responds that the MBCA does not apply because the allegedly fraudulent payments the shareholders received are not "distributions" within the meaning of the statute and the three shareholders are corporate "insiders" of Capitol Sales, and therefore have fiduciary duties.

### A. Fraudulent Transfer Claims

BMO's fraudulent-transfer claims against the shareholders implicate two Minnesota statutes: MUVTA and the MBCA.  MUVTA allows a creditor to recover the value of a fraudulent conversion that a debtor made to a third party to avoid collection by the creditor. BMO brought its fraudulent-transfer claims under MUVTA and seeks to recover the distributions the shareholders received from Capitol Sales.  The MBCA, by contrast, broadly governs corporations and outlines when a corporation may make distributions to shareholders and when shareholders must return improperly made distributions.  The MBCA provides that its sections governing shareholder distributions "supersede all other statutes of this state with respect to distributions," and it makes specific reference to MUVTA, stating that "the provisions of sections 513.41 to 513.51 [MUVTA] do not apply to distributions made by a corporation governed by this chapter."  Minn. Stat. § 302A.551, subd. 3(d).  In this way, the MBCA "displaces normal rules of fraudulent transfers" when it comes to corporate distributions to shareholders.  *Buckrey v. Comm'r of Internal Revenue*, 114 T.C.M. (CCH) 45, 2017 WL 2964716 at *11 (2017).  The parties agree that if the payments the shareholders received from Capitol Sales are distributions within the meaning of the MBCA, then MUVTA does not, and cannot, apply to those payments.

BMO hangs its hat on the payments not being distributions.  It argues that because the payments were not made in proportion to the shareholders' respective shares, and because the payments were not authorized by the board of directors, the totality of the circumstances demonstrate that these payments are not distributions.  This argument fails for several reasons.

First, the Amended Complaint controls the Court's analysis.  In it, BMO plainly and repeatedly refers to the payments as distributions (115 times, to be exact).  BMO cannot now, in opposition to the shareholders' motions to dismiss, argue that the payments are not distributions when BMO itself called them distributions throughout its pleading with no suggestion to the contrary.  "When analyzing a motion to dismiss, the court looks to the complaint as pleaded."  *Lake v. Honeywell, Inc.*, No. 4-96-944, 1997 WL 458463, at *2 (D. Minn. May 27, 1997); *see also Stepps v. Bd. of Trs. of Univ. of Arkansas*, No. 4:21-CV-00986-LPR, 2022 WL 4086647, at *1 n.4 (E.D. Ark. Sept. 6, 2022) (resolving a discrepancy between what is contained in the complaint and in the response to a motion to dismiss in favor of the complaint because "[a]t this stage of the litigation, the factual allegation made in the Amended Complaint controls").  BMO already amended its complaint once in response to the shareholders' original motions to dismiss, which raised the same argument that MUVTA does not apply to shareholder distributions.  BMO had notice of the shareholders' argument, and it could have alleged in its Amended Complaint that the payments were not distributions.  Instead, it doubled down on its characterization of the payments at issue.  The Court will not now disregard either that decision or the clear assertions in the complaint.

Second, by its own terms the MBCA defines "distributions" broadly to include all transfers made by the corporation to any of its shareholders.

> "Distribution" means a direct or indirect transfer of money or other property, other than its own shares, with or without consideration, or an incurrence or issuance of indebtedness, by a corporation to any of its shareholders in respect of its shares. A distribution may be in the form of a dividend or a distribution in liquidation, or as consideration for the purchase, redemption, or other acquisition of its shares, or otherwise.

6

Minn. Stat. § 302A.011, subd. 10.  The statute contains no requirement that only payments made pro rata or with approval by the board of directors are considered distributions.

In an effort to avoid the application of the MCBA, BMO conflates the question of whether a distribution was properly or improperly made with whether a payment was a distribution at all.  But the MBCA makes clear that those are distinct questions.  Section 302A.011 defines a distribution as "a direct or indirect transfer . . . by a corporation to any of its shareholders." Minn. Stat. § 302A.011, subd. 10. Section 302A.551 then outlines when shareholder distributions are *properly* authorized: "only if the board determines . . . that the corporation will be able to pay its debts in the ordinary course of business after making the distribution."  *Id.* § 302A.551, subd. 1.  If, however, this requirement is not met and a distribution is improper, Section 302A.557 is the sole basis under Minnesota law for shareholders to be liable for improper distributions, and that section only allows the corporation or its receiver to recover, not a creditor.  *Id.* § 302A.557, subd. 1.

> A shareholder who receives a distribution made in violation of the provisions of section 302A.551 is liable to the corporation, its receiver or other person winding up its affairs, or a director under section 302A.559, subdivision 2, but only to the extent that the distribution received by the shareholder exceeded the amount that properly could have been paid under section 302A.551.

*Id.*  This provision allows for the recovery of improperly made distributions, and notably makes no mention of shareholder liability to creditors.

Moreover, if BMO were correct that only properly made distributions count as "distributions" under the statute, then section 302A.557 and its avenue of relief for improper distributions would be rendered superfluous.  *See Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d

164, 170 (Minn. 2021) (discussing the "canon against surplusage" employed by Minnesota courts in interpreting state statutes and its instruction to "avoid interpretations that would render a word or phrase superfluous, void, or insignificant, thereby ensuring each word in a statute is given effect").  Accordingly, the fact that the board did not authorize the payments Capitol Sales made to its three shareholders certainly affects whether the payments were proper, but not whether they were distributions.  Under a plain reading of the MBCA, the payments at issue here amount to distributions because they were made "by a corporation to any of its shareholders in respect of its shares."  *Id.* § 302A.011, subd. 10.

The Court is not persuaded by BMO's contention that "in respect of" should be read so that only pro rata distributions in proportion to the number of shares held by a shareholder qualify as distributions.  First, BMO cites no authority for this proposition.  Moreover, the plain language of the term does not point to such a limitation.  *Cf. Jennings v. Rodriguez*, 138 S. Ct. 830, 856 (2018) (Thomas, J., Gorsuch, J., concurring in part) ("The phrase 'with respect to' means 'referring to,' 'concerning,' or 'relating to'") (citing Oxford American Dictionary and Language Guide 853 (1999 ed.); *accord*, Webster's New Universal Unabridged Dictionary 1640 (2003 ed.); American Heritage Dictionary 1485 (4th ed. 2000)).  A transfer from a corporation to a shareholder "in respect of" its shares simply means that the shareholder is receiving that payment because it owns shares.

The Court's reading of the statute is confirmed by the caselaw.  The MBCA's use of the term "distribution" has been broadly interpreted and precludes MUVTA from applying to shareholder distributions, properly or improperly made.  In *Buckrey*, corporate shareholders petitioned for review of an IRS determination that the shareholders were liable,

under a fraudulent-transfer theory, for the corporation's tax liabilities.  *See Buckrey*, 114

T.C.M. (CCH) 45, 2017 WL 2964716 at *5 (2017).  The Tax Court granted partial summary

judgment to the shareholders, holding that the corporation's partial redemption of the

shareholders' stock counted as a distribution and consequently was governed by the MBCA

and not the predecessor to MUVTA.  *Id.* at *11.  Commenting that although it "seems

strange that Minnesota precludes outside creditors from challenging the propriety of a

corporate distribution," the court "can't and won't ignore the plain language of the statute."

*Id.*  Even if a shareholder distribution "was illegal at the time it occurred, the MBCA doesn't

give standing to challenge an illegal distribution" to creditors.  *Id.* at *12.

An earlier decision by a court in this district aligns with *Buckrey*'s interpretation of the

two statutes, holding that the MCBA "renders [MUVTA] inapplicable to corporate

distributions."  *Helm Fin. Corp. v. MNVA R.R., Inc.*, Civil No. 97-1342 (DSD/JMM), 1998

U.S. Dist. LEXIS 22857 at *6 (D. Minn. June 24, 1998), *aff'd on other grounds*, 212 F.3d 1076

(8th Cir. 2000).  In *Helm*, the district court denied summary judgment to a creditor seeking to

void a distribution as a fraudulent transfer, holding that MUVTA was plainly "not applicable

to the stock transfer."  *Id.*; *see also Metro. Steel Fabricators, Inc. v. Michalski (In re Metropolitan Steel

Fabricators, Inc.)*, 191 B.R. 150, 152 (Bankr. D. Minn. 1996) (noting grant of summary

judgment on "fraudulent transfer claims pursuant to Minn. Stat. §§ 513.41-513.51 to the

extent that the claims are defined as corporate distributions by the Minnesota Business

Corporation Act").

For these reasons, BMO fails to state a claim against the shareholders for fraudulent

conversion.  The payments were distributions within the meaning of the MBCA, and the

MBCA expressly supersedes MUVTA with respect to shareholder distributions.  Because BMO seeks to recover the shareholder distributions under MUVTA, but MUVTA does not apply, Counts I–IX are dismissed with prejudice.

### B. Breach of Fiduciary Duty Claims

The shareholders also moved for dismissal of BMO's breach-of-fiduciary-duty claims against them (Count X).  Whether BMO states such a claim depends squarely on whether the defendant shareholders were also officers or directors of Capitol Sales during the relevant time period.

For over a century, Minnesota common law has recognized a breach of fiduciary duty where officers or directors of an insolvent (or nearly insolvent) corporation prefer their own debt over that owed to other creditors of the corporation.  *See Taylor v. Mitchell*, 83 N.W. 418, 420 (Minn. 1900); *Taylor v. Fanning*, 91 N.W. 269, 270 (Minn. 1902); *Aiken v. Timm*, 180 N.W. 234, 235 (Minn. 1920); *Farmers Co-op. Ass'n of Bertha, Minn. v. Kotz*, 23 N.W.2d 576, 579 (Minn. 1946), *abrogated on other grounds by Rubey v. Vannett*, 714 N.W.2d 417 (Minn. 2006); *Snyder Elec. Co. v. Fleming*, 305 N.W.2d 863, 869 (Minn. 1981).  In the *Taylor* cases, the Minnesota Supreme Court held that directors of an insolvent company breached their fiduciary duty to the other creditors of the company by authorizing the issuance of notes and a mortgage in their names, thereby using their positions as directors "to secure the payment of their own debt in preference to debts of other creditors." *Taylor v. Fanning*, 91 N.W. at 270; *see also Taylor v. Mitchell*, 83 N.W. 418, 420 (Minn. 1900).  In *Aiken*, the court similarly held that a general manager of a corporation acted in bad faith by conveying land to his wife

for repayment of company debt owed to her and to him, thus preferring the repayment of his family's debt over that of other creditors.  180 N.W. at 235.

*Snyder Electric* is the most recent case by the Minnesota Supreme Court exploring this type of fiduciary breach.  There, the court held that a defendant—who was the sole shareholder and chief officer of a corporation—breached his fiduciary duty to other creditors by taking advantage of his role as chief officer to have the insolvent company repay him for antecedent debts to the detriment of other creditors.  305 N.W.2d at 869.  The court qualified the limited fiduciary duty that it recognized directors and officers owe to a corporation's creditors:

> When a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors.  As fiduciaries, they cannot by reason of their special position treat themselves to a preference over other creditors.  By "preference" we here mean generally a transfer or encumbrance of corporate assets made while the corporation is insolvent or verges on insolvency, the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise similarly secured interests.

*Id.* (citations omitted).

Thus, it is a well-settled principle in Minnesota law that officers and directors breach a fiduciary duty to a corporation's creditors when they themselves are creditors of the corporation and use their position at the company to prefer their own debt over that of other creditors.  One case, by the Minnesota Court of Appeals, extended the limited fiduciary duty the Minnesota Supreme Court recognized in *Snyder* beyond the context of a director preferring his own debt.  *See Drewitz v. Motorwerks, Inc.*, 867 N.W.2d 197, 206 (Minn. Ct. App. 2015).  The *Drewitz* court held that a director breached his fiduciary duty to

creditors when he liquidated most of the company's assets by authorizing shareholder distributions that would go to himself and the one other shareholder of the company. The court reasoned that "[i]f the prohibition on 'preferences' outlined in *Snyder* prevents corporate directors from favoring their *own* bona fide debts over those of outside creditors . . . this prohibition similarly extends to directors who knowingly 'prefer' their share of corporate profits over the rights of a pending claimant." *Id.* at 207.

Of course, this Court does not need to follow *Drewitz*'s application of the fiduciary duty recognized in *Snyder Electric* to encompass all self-preferencing actions by officers and directors, and not just repayment of their debts. *See Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 858 (8th Cir. 2008) ("The decision of an intermediate state appellate court is not binding on a federal court that seeks to determine state law.") But the shareholders have pointed to no authority stating that *Drewitz*'s application is incorrect. The cases they cite predate *Drewitz* by over a decade, and the fact that the Minnesota Supreme Court has not expressed approval of *Drewitz* carries little weight, as it also has not rejected its approach. This Court declines to find at the motion to dismiss stage that *Drewitz*'s application of *Synder Electric* is incorrect as a matter of law.

However, even with the Court agreeing that *Drewitz* is correct, the breach of fiduciary duty claims must fail as to the shareholders. No authority cited by the parties or discovered by the Court holds that individuals, who are solely shareholders, owe a fiduciary duty to the creditors of the corporations they own stock in, nor that they can breach that duty merely by *receiving* shareholder distributions from an insolvent corporation. *Cf. Ass'n of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc.*, 553 N.W.2d 446, 451 (Minn. Ct. App. 1996) (rejecting

creditor's attempt to hold sole shareholder liable for corporate debt because "[i]n no case has the *Snyder Electric* holding been extended to create a shareholder's fiduciary duty to creditors based solely on its status as shareholder"). Generally, under Minnesota law, shareholders of a corporation are "under no obligation to the corporation or its creditors" with respect to the shares they own. Minn. Stat. § 302A.425. Indeed, the only cases holding shareholders liable under Minnesota law for a breach of fiduciary duty are cases in which those shareholders were also directors or officers of the company. *See, e.g.*, *Snyder*, 305 N.W.2d at 866 (sole shareholder and chief officer); *B & S Rigging & Erection, Inc. v. Wydella*, 353 N.W.2d 163, 165 (Minn. Ct. App. 1984) (shareholders, directors, and officers); *Drewitz*, 867 N.W.2d at 206 (director and majority shareholder).

Accordingly, only if BMO has adequately pled that the three defendant shareholders in this case—Kenneth Kuskie, John Stedman, and Susan Stedman—were directors or officers of Capitol Sales can BMO's claims against them for breach of a fiduciary duty state a claim upon which relief can be granted. But BMO made answering the question of whether the defendant shareholders were also directors or officers difficult by its choice of language in the pleading. In the background section, the Amended Complaint states that "[a]t all times relevant, Kuskie, J. Stedman and S. Stedman were *shareholders* of Capitol Sales." [Am. Compl. ¶ 30] (emphasis added). And it continues to refer to them as shareholders throughout the complaint. It also alleges that Mr. Kuskie, Mr. Stedman, and Ms. Stedman "at all times relevant were *insiders*" of Capitol Sales. [Am. Compl. ¶ 17] (emphasis added). By way of contrast, BMO alleges that Mr. Hayes was employed by Capitol Sales "since 1986"

and was "[a]t all times relevant," the "President and Chief Financial Officer" of the company.  [Am. Compl. ¶ 11.]

The terms shareholder, officer, director, and insider have distinct meanings under Minnesota law.  The MBCA, which applies to Minnesota corporations, defines "officer" as "the chief executive officer, the chief financial officer," or "a person elected, [deemed elected,] appointed or otherwise designated as an officer" by the board of directors.  Minn. Stat. § 302A.011, subd. 18.  Mr. Hayes, therefore, is certainly an officer of Capitol Sales.  The MBCA defines a director as "a member of the board," *id.* § 302A.011, subd. 9, and a shareholder as "a person registered on the books or records of a corporation . . . as the owner of whole or fractional shares," *id.* § 302A.011, subd. 29.  In contrast, corporate "insider" is a term that appears only in MUVTA, which is not applicable to the fiduciary-breach claims, and does not appear in the MCBA.  When a debtor is a corporation, an insider is a director, officer, person in control, a general partner, or a relative of any of the preceding terms.  Minn. Stat. § 513.41(8).  So, by alleging that Mr. Kuskie, Mr. Stedman, and Ms. Stedman were shareholders and insiders of Capitol Sales, this could mean they were directors or officers, but it does not necessarily require that conclusion: the MUVTA's insider definition is not only irrelevant to the MCBA, but it reaches far more broadly than the coverage of the common-law fiduciary breach claim.

Rather than clarifying this issue, the section of BMO's Amended Complaint specifically pertaining to the breach of fiduciary duty claims adds to the ambiguity.  First, BMO's use of group pleading obfuscates who allegedly did what.  BMO groups its breach-of-fiduciary-duty claims against the three shareholders and Mr. Hayes under Count X,

despite the four defendants having different roles in the company and varying levels of involvement, if any, in the factual allegations underpining the alleged breaches of duties.

Further, BMO's use of "and/or" to describe the shareholders' roles significantly exacerbates the lack of clarity stemming from the group pleading. Count X sets out that "Kuskie, J. Stedman and S. Stedman, as officers, directors *and/or* Shareholders of Capitol Sales, owed duties of good faith, loyalty and due care to Capitol Sales, and by operation to Capitol Sales' creditors." [Am. Compl. ¶ 137] (emphasis added). BMO then makes three specific allegations concerning how the defendants allegedly breached their fiduciary duties to BMO. First, the "officers, directors *and/or* Shareholders by their actions or omissions allowed the books and records of the Company to be tampered with, manipulated, and fraudulently transmitted to creditors for the insiders' benefit and to the detriment of the Company's creditors." [*Id.* ¶ 138] (emphasis added). Second, the "payments authorized to be paid to Capitol Sales' insiders (Shareholders and Hayes) by the officers, directors *and/or* shareholders of Capitol Sales" were made when BMO was a creditor of Capitol Sales, and "the Shareholders and Hayes further pushed Capitol Sales into insolvency." [*Id.* ¶ 139–40.] Third, "Hayes, Kuskie, J. Stedman and S. Stedman, as officers, directors *and/or* Shareholders, by knowingly engaging in self-dealing and self-interest, in the face of Capitol Sales' insolvency" breached their fiduciary duty to Capitol Sales' creditors. [*Id.* ¶ 141] (emphasis added).

It is noteworthy that the claims regarding the actions taken are vague and conclusory. BMO's allegation that the shareholders allowed someone else to tamper with the Capitol Sales books and records does not describe any self-preferencing behavior that could form

the basis of liability for a breach of fiduciary duty under Minnesota law.  Nor does the bare allegation that the defendants "knowingly engag[ed] in self-dealing and self-interest[ed]" behavior aid BMO's cause—without sufficient supporting factual allegations about what that purported self-dealing behavior was, this allegation is nothing more than a conclusory assertion the Court need not accept as true.  *See Iqbal*, 556 U.S. at 678.

But more critically, BMO's and/or pleading is not enough here.  The assertion that the "officers, directors and/or shareholders of Capitol Sales" authorized the payments to the shareholders and Mr. Hayes at a time when the company was insolvent, to the detriment of creditors like BMO is only sufficient if each of the three shareholders were officers or directors of the corporation.  [Am. Compl. ¶ 139.]  BMO never plainly alleges that any of them were.  Instead, BMO uses an ambiguous "and/or" construction that leads to competing possibilities for the alleged breach of fiduciary duties by the three shareholders, one of which states a claim upon which relief could be granted and the other which does not.  The allegations in Count X could be read to mean that Mr. Kuskie, Mr. Stedman, and Ms. Stedman—as shareholders alone—owed fiduciary duties to BMO; allowed the company's books to be tampered with; authorized payments to Capitol Sales' insiders when it was insolvent; and engaged in self-dealing behavior.  However, as a matter of law, such assertions of shareholder activity do not state a claim for breach of fiduciary duty in Minnesota.  Alternatively, these allegations could be interpreted to mean that Mr. Kuskie, Mr. Stedman, and Ms. Stedman took these actions as officers or directors, in which case the Amended Complaint presents a plausible fiduciary-duty claim.

16

BMO's failure to specify whether it is alleging that Mr. Kuskie, Mr. Stedman, and Ms. Stedman were officers or directors is revealing because in their original, now-withdrawn motions to dismiss, the shareholders argued that as shareholders, they do not owe fiduciary duties to BMO, and that BMO failed to allege they were directors or officers.  [*See, e.g.*, Dkt. No. 32 at 7-8.[2]]  As with the MUVTA claims, BMO had notice of the shareholders' arguments and could have provided clarity through its amendment of the pleadings.  It could have plainly asserted that each of the defendants was a director or an officer at the relevant time, articulating facts to support such claims.  It did not.

In any event, this Court's task is to determine whether the Amended Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Evaluating whether a complaint states a plausible claim to relief is a "context-specific task" that looks at whether the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 679, 678.  BMO's pleading falls short because its allegations against the shareholders are susceptible of multiple interpretations, one that is consistent with liability and the other that is not.  *Id.* at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it

---

[2] Although not properly before the Court for purposes of determining whether BMO has failed to state a claim under Rule 12(b)(6), the declaration from Ms. Stedman's counsel demonstrates that when asked to clarify whether BMO was alleging that Ms. Stedman was an officer or director of Capitol Sales, BMO's counsel did not provide any straightforward confirmation.  [Decl. of Christopher W. Boline, Ex. A, Dkt. No. 96.]

stops short of the line between possibility and plausibility of entitlement to relief.")
(quotation marks omitted).

Courts faced with similarly ambiguous complaints have found the pleadings
insufficient.  The Sixth Circuit, addressing whether a pleading was sufficient to allege
personal jurisdiction, has affirmed a district court's dismissal of a case where the complaint
used similar "and/or" language and was susceptible to multiple interpretations.  *Palnik v.
Westlake Ent., Inc.*, 344 F. App'x 249, 250–52 (6th Cir. 2009).  There, the plaintiff sued
producers and distributors of a movie that used his copyrighted songs without permission.
*Id.* at 250.  The major distributors settled, leaving two California-based firms as defendants
that then moved to dismiss the suit for lack of personal jurisdiction.  *Id.*  The complaint
alleged that the defendants were "producers and/or distributors" of the movie.  *Id.* at 252.
The court explained that if the remaining defendants were producers and distributors, the
allegations were sufficient to sustain personal jurisdiction, but if they were only producers,
that was insufficient.  *Id.*  But "because one conclusion supports jurisdiction and the other
does not," the court concluded that plaintiff's complaint failed to provide "reasonably
particular facts that resolve which is the better understanding of the defendants' actions" and
did not "sort out the relationship between the defendants."  *Id.*  The Sixth Circuit found
comfort in Rule 11(b) of the Federal Rules of Civil Procedure, which the court explained
would have allowed the plaintiff to assert on "knowledge, information, and belief" that the
defendants were distributors and assert that a reasonable opportunity for discovery would
provide evidentiary support.  *Id.* at 252–53.

Other courts have reached similar conclusions in the securities fraud context. Plaintiffs who allege that they bought a security issued under a materially false or misleading registration statement must show that they can trace their shares back to the public offering that used the registration statement. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). The Ninth Circuit held that investors failed to state a plausible claim for relief where the relevant allegation in the complaint could lead to "two possible explanations, only one of which can be true and only one of which results in liability." *Id.* at 1108. In such a case, the Ninth Circuit explained that plaintiffs need to offer "[s]omething more" than allegations that are "'merely consistent with' their favored explanation but are also consistent with the alternative explanation," such as facts that "exclude the possibility that the alternative explanation is true." *Id.* at 1108 (quoting *Iqbal*, 556 U.S. at 678). The Fourth Circuit has agreed, holding that "and/or" language in a complaint for securities fraud must be "coupled with sufficient supporting facts" to give rise to a plausible claim for relief. *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 900 (4th Cir. 2014). In *Yates*, the "plaintiffs' coy choice of words" gave the court some pause, and it did not find "the additional supporting facts sufficient to push the claim" from merely possible to plausible. *Id.*

The same is true with BMO's complaint. The use of "and/or" is not always a death knell, especially when closely held corporations often have shareholders who are also officers or directors. But BMO has failed to provide any additional facts that exclude the possibility that the shareholders here are just shareholders and cause its alternative reading—that they are also officers or directors—to rise to the level of plausibility. Although it describes Mr.

Kuskie, Mr. Stedman, and Ms. Stedman as being corporate "insiders" of Capitol Sales, this could mean that they are merely relatives of directors and officers but not directors or officers themselves. *See* Minn. Stat. § 513.41(8). And being an "insider" by itself is not enough to establish a fiduciary duty under Minnesota law. Looking at the Amended Complaint as a whole, BMO's terse description of the three shareholders as insiders and shareholders stands in stark contrast with its specific factual allegations regarding Mr. Hayes, for whom BMO provides the year he was hired and the specific roles he held at Capitol Sales. [*Compare* Am. Compl. ¶ 9 *with* ¶ 11.] Even examining the factual allegations pertaining to other claims in the complaint does not exclude the possibility that Mr. Kuskie, Mr. Stedman, and Ms. Stedman were just shareholders at the time of the transfers. In explaining why the shareholders knew or should have known Capitol Sales was insolvent at the time of the payments in question, BMO alleges that the shareholders were "provided with Capitol Sales' financial statements and records to review," and "controlled ownership of the investments in Capitol Sales," which are consistent with shareholder responsibilities. [*E.g.*, Am. Compl. ¶¶ 42, 116.]

The Court is mindful of guidance from the Eighth Circuit that a plaintiff need not "rebut *all* possible lawful explanations for a defendant's conduct" to survive a motion to dismiss. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009) (emphasis added). But it finds this to be a situation with a "concrete, obvious alternative" requiring a plaintiff to "plead additional facts tending to rule out the alternative." *Id.* at 597 (citing *Iqbal*, 556 U.S. at 682) (quotation marks omitted).

Given the ambiguous "and/or" phrasing to describe the shareholders' roles at the company that is susceptible to multiple interpretations; the group pleading for these claims; and the lack of specific factual allegations supporting BMO's claims that the shareholders breached a fiduciary duty owed to the bank, the Court grants the shareholders' motions to dismiss these claims. To the extent the claims are pled against Mr. Kuskie, Mr. Stedman, and Ms. Stedman solely in their capacities as shareholders, the Court grants the motion to dismiss with prejudice because shareholder status alone is not enough to confer a fiduciary duty under Minnesota law. However, the Court otherwise dismisses the claims without prejudice to allow refiling if, within the bounds of Rule 11, BMO can allege that the three shareholders were also officers or directors.

## IV.     ANALYSIS OF CROSSCLAIMS AND THIRD-PARTY COMPLAINT

The shareholders also filed motions to dismiss Mr. Hayes's amended crossclaims in which he seeks indemnification and advancement of legal fees from them. [Dkt. Nos. 56, 66, 80]. The shareholders argue that his indemnification claim under Minn. Stat. § 181.970 is preempted by Minn. Stat. § 302A.521; that Minn. Stat. § 302A.521 does not allow for indemnification against shareholders; that his indemnification claim under § 302A.521 is premature; and that he did not satisfy the requirements of § 302A.521 before seeking advancement of legal fees. They also argue that he has not met the pleading standard to pierce the corporate veil and hold them—as opposed to Capitol Sales—liable for indemnification and advancement of legal fees. Capitol Sales incorporates by reference the arguments of the shareholders to support its own motion to dismiss Mr. Hayes's third-party

complaint against the corporation, which also seeks indemnification and advancement under the same statutes.

Mr. Hayes responds that he can plead his indemnification claims in the alternative; the court can wait to act on his indemnification claim under Minn. Stat. § 302A.521 until the underlying proceedings conclude and need not dismiss it; and his written affirmation satisfies the statutory requirements. He also argues that veil piercing is subject to a more liberal notice-pleading standard, and that in any event, he provided sufficient facts under either pleading standard.

### A. Indemnification Under Minn. Stat. § 181.970

Mr. Hayes sought indemnification and advancement of legal fees under Minn. Stat. § 181.970 and alternatively under Minn. Stat. § 302A.521 from both Capitol Sales and the shareholders. Section 181.970 generally requires an employer to indemnify its employees for civil damages that arose while the employee was performing employment duties. Section 302A.521 (which is part of the MBCA) requires a corporation to indemnify individuals who served the corporation in an "official capacity," including officers and directors. Mr. Hayes's indemnification claims under Minn. Stat. § 181.970 fail because that statute, by its express terms, does not apply to "employees and employers who are governed by indemnification provisions under section 302A.521." Minn. Stat § 181.970, subd. 2(3). Mr. Hayes agrees that Capitol Sales is a corporation and that he served it as an officer. [Hayes Am. Crossclaims ¶ 8, Dkt. No. 50; Hayes Am. Third-Party Compl. ¶ 2, Dkt. No. 50.] Therefore, he is an employee governed by the indemnification provision under § 302A.521, and Minn. Stat. § 181.970 does not apply to him.

The Court is not persuaded by Mr. Hayes's argument that *Dochniak v. Dominium Management Services, Inc.*, No. CIV. 06-237 (JRT/FLN), 2007 WL 2669443, at *7, n.5 (D. Minn. Sept. 6, 2007) stands for the proposition that an employee can simultaneously make a claim for indemnification under Minn. Stat. § 181.970 and § 302A.521.  Such a reading requires the Court to ignore the plain text of Minn. Stat. § 181.970 excluding employees and employers covered by § 302A.521.  Moreover, in *Dochniak*, the court granted the employee summary judgment on the employer's counterclaim for negligence because the employee would be entitled to indemnification.  *See Dochniak*, 2007 WL 2669443, at *7.  Mr. Hayes relies on a footnote in *Dochniak* stating that under either indemnification statute, the employer would have to indemnify the employee unless it can show that he acted in bad faith.  *Id.* at *7 n.5.  The question presented here was not squarely before the court in *Dochniak*, and the dicta in that footnote cannot override the clear statutory command contained in the text of Minn. Stat § 181.970, subd. 2(3).

Mr. Hayes's indemnification claims are dismissed with prejudice to the extent he seeks relief pursuant to Minn. Stat. § 181.970.

## B.  Indemnification Under Minn. Stat. § 302A.521

The Court next considers Mr. Hayes's claims seeking indemnification pursuant to Minn. Stat. § 302A.521, which *does* apply to him.  He seeks indemnification from his former employer, Capitol Sales, and also asks the Court to pierce the corporate veil to hold the shareholders liable for indemnification as the corporation's "alter ego."

Section 302A.521 requires Capitol Sales to indemnify Mr. Hayes if he (1) has not been indemnified by another organization for the same proceedings; (2) acted in good faith;

(3) did not receive an improper personal benefit; (4) did not have reason to believe his conduct was unlawful; and (5) reasonably thought the conduct was in the best interests of Capitol Sales.  But "[t]he right to indemnification cannot be determined until the legal proceedings have concluded." *Asian Women United of Minnesota v. Leiendecker*, 789 N.W.2d 688, 691 (Minn. Ct. App. 2010); *see also* Minn. Stat. § 302A.521, subd. 6(5) (directing that a court may review the denial of indemnification within 60 days after the termination of the underlying proceeding or a written request for indemnification, whichever is later).  Here, the underlying legal proceedings have not concluded, so the Court cannot act on Mr. Hayes's request for indemnification from Capitol Sales at this time.  That does not mean that Mr. Hayes has failed to state a claim for indemnification, however, so the Court denies Capitol Sales' motion to dismiss the indemnification claim under Minn. Stat. § 302A.521.

The same cannot be said for Mr. Hayes's indemnification claims against the shareholders.  The Court dismisses these claims because Mr. Hayes failed to meet the pleading standard for piercing the corporate veil.  In essence, there is no factual meat on the bones of his claims against the shareholders to permit these claims to survive.

Under Minnesota law, courts apply a two-prong test to determine whether a corporate veil should be pierced to hold a party liable as the "alter ego" of the entity.  *Johnson v. Evangelical Lutheran Church in America*, CV No. 11-23 (MJD/LIB), 2011 WL 2970962, at *6 (D. Minn. July 22, 2011).  First, a court examines the reality of "how the corporation operated and the individual defendant's relationship to that operation."  *Victoria Elevator*, 283 N.W.2d at 512 (quotation omitted).  In *Victoria Elevator*, the Minnesota Supreme Court listed factors that weigh in favor of piercing the corporate veil, including "insufficient

capitalization," a "failure to observe corporate formalities," the "absence of corporate records," any "siphoning of funds by [a] dominant shareholder," nonfunctioning of corporate officials, and the corporation existing as a mere "facade for individual dealings." *Id.* Piercing the corporate veil requires several of these factors to be present. *Id.* Second, a plaintiff seeking to pierce the corporate veil must also show that there is an "element of injustice or fundamental unfairness" that requires holding the individual defendants personally liable for the acts of the corporation. *Id.*

In Mr. Hayes's amended crossclaims against the shareholders, he provides two paragraphs related to piercing the corporate veil to seek indemnification directly from the shareholders. Both consist of legal conclusions the court need not accept. *See Iqbal*, 556 U.S. at 678. First, he merely restates the factors identified in *Victoria Elevator* without any factual allegations to support them:

> Co-Defendants are the sole owners of Capitol Sales and as a result of their conduct:
> (a) Capitol Sales has insufficient capitalization for purposes of its corporate undertaking;
> (b) Capitol Sales has failed to observe corporate formalities;
> (c) Co-Defendants have siphoned funds from Capitol Sales to pay themselves; and
> (d) Capitol Sales has failed to maintain adequate or appropriate corporate records.

[Hayes Am. Cross-Claims ¶ 32.] He then alleges in a similarly conclusory fashion:

> As a result, piercing the corporate veil for Hayes' indemnification claim is necessary to avoid injustice or fundamental unfairness.

[*Id.* ¶ 32.] This is simply insufficient to meet his pleading burden. In *Johnson*, the court dismissed the plaintiff's claim for alter-ego liability, explaining that "beyond the conclusory

allegation" of the *Victoria Elevator* factors being present, there were "no factual allegations to support the first prong of piercing the corporate veil" and the "barebones allegation that injustice or fundamental unfairness will result" was insufficient to meet the second prong. *Johnson*, 2011 WL 2970962, at *6–7. The same is true here.

Mr. Hayes provides no facts to support the factors he claims are present. In his background section, he describes that he asked the shareholders to inject more funds into "Capitol Sales when it experienced a rapid business decline around the pandemic, and they declined. [Hayes Am. Crossclaims ¶ 12.] But the shareholders' decision not to inject more funds into Capitol Sales at one point in time does not, by itself, meet Mr. Hayes's burden. First, the shareholders correctly contend that the "adequacy of capitalization must be measured at the time of incorporation" because initial undercapitalization "reveals whether the corporation was created to avoid liability." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1079 (D. Minn. 2013) (quoting *NLRB v. Bolivar–Tees, Inc.*, 551 F.3d 722, 730 n.7 (8th Cir. 2008)). Second, even if this later undercapitalization was considered, pleading facts that satisfy only the undercapitalization factor from *Victoria Elevator* "would not be enough." *Brown v. Pfeiffer*, No. 19-cv-3132 (MWW/KMM), 2020 WL 1164594, at *6 (D. Minn. Mar. 11, 2020). This Court would be hard pressed to find any company that has not suffered hard times (especially during the pandemic), and the mere fact that investors declined to inject additional capital into the company when it was struggling is not enough to hold those individuals liable as the alter ego of the company. Mr. Hayes provides no other facts to support his conclusions that Capitol Sales failed to maintain adequate corporate records,

failed to observe corporate formalities, or that the shareholders siphoned funds from the company.

Mr. Hayes contends that he just needs to meet Minnesota's more liberal notice-pleading standard for this claim, relying upon *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997), in which the Minnesota Supreme Court held that a plaintiff need only plead "broad general statements that may be conclusory" to state a claim for piercing the corporate veil. *Id.* And it's true that some cases from this district, relying upon *Barton* and other cases that predated *Iqbal*, have indeed suggested that plaintiffs only need to meet Minnesota's lower, notice-pleading standard for bringing veil-piercing claims in federal court. *See, e.g.*, *Chairez v. AW Distrib., Inc.*, No. 20-CV-1473 (NEB/TNL), 2021 WL 1600494, at *5 (D. Minn. Apr. 23, 2021) ("To survive a motion to dismiss an alter ego claim, a plaintiff need only give notice of the theory under which it plans to proceed and its intent to pierce the corporate veil."); *Damon v. Groteboer*, No. 10-CV-92 (JRT/FLN), 2011 WL 886132, at *6 (D. Minn. Mar. 14, 2011) (same); *see also Minn. Wild Hockey Club, LP v. Emil Interactive Games, LLC*, No. 16-cv-1545 (WMW/TNL), 2016 WL 11784006, at *6 (D. Minn. Dec. 28, 2016) (collecting cases and summarizing the different ways courts in this district have approached motions to dismiss corporate veil-piercing claims based upon insufficient pleading).

This Court is instead persuaded by the reasoning in *Minnesota Wild Hockey Club*, which held that the federal pleading standard for veil-piercing claims "requires more than Minnesota's *Barton* pleading standard." 2016 WL 11784006, at *8. The Court agrees that it must apply the *federal* pleading standard to determine whether a plaintiff states a claim, even when applying substantive state law. *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545,

548 (8th Cir. 2013); see also Fed. R. Civ. P. 81(c)(1) (providing that the Federal Rules of Civil Procedure apply to cases after they are "removed from a state court"). Therefore, conclusory claims that merely restate the *Victoria Elevator* factors, without any factual allegations to support them, are insufficient at this stage to support imposing alter ego liability.

Nevertheless, facts supporting piercing the corporate veil may emerge during discovery in this case, and this order should not be read to "foreclose a future, better-pled and substantiated claim in this regard." *Brown*, 2020 WL 1164594 at *6. Although the Court grants the shareholders' motions to dismiss the indemnification claim against them, it does so without prejudice to allow Mr. Hayes to replead a claim, if he chooses, against the shareholders with sufficient factual allegations to support piercing the corporate veil.

### C. Advancement of Legal Fees Under Minn. Stat. § 302A.521

Unlike indemnification, advancement of legal expenses is "critical to the officer's ability to defend himself in litigation" and "must be made promptly, otherwise its benefit is forever lost." *RBA, Inc. v. Reinhart*, Civil No. 16-2841 (SRN/DTS), 2017 WL 10621148, at *3 (D. Minn. Aug. 23, 2017) (quotation omitted). An employee seeking advancement from their corporation must provide the corporation with a written affirmation of their good faith belief that they meet the criteria for indemnification and a written undertaking to repay the advance payment if it is later determined that they are not entitled to indemnification. Minn. Stat. § 302A.521, subd. 3. A court may not act on an individual's request for advancement under Minn. Stat. § 302A.521 until after the corporation rejects the written request or has not acted on it within 60 days after receiving it. *See* Minn. Stat. § 302A.521, subd. 6(5)(ii).

The parties quibble about when Mr. Hayes satisfied the statute's requirements for a written affirmation. The Court need not wade into this matter, as all parties agree that the requirements were satisfied at the latest by a letter and declaration sent to the shareholders and Capitol Sales on July 14, 2022. [Decl. of Bryan J. Morben, Ex. C, Dkt. No. 87.] This means that Capitol Sales had 60 days, until Sept 12, 2022, to respond to Mr. Hayes's written request for indemnification and advancement of legal fees. There has been no update regarding whether Mr. Hayes's request for advancement has been granted by Capitol Sales. If it has not been approved, it is **HEREBY ORDERED**. The only defense to this claim offered by Capitol Sales and the shareholders is that the statutorily mandated time for the company to act on Mr. Hayes's request had not passed. Now that it has, the Court denies Capitol Sales' motion to dismiss Mr. Hayes's claim for advancement under Minn. Stat. § 302A.521 and grants Mr. Hayes the relief he seeks.

## V.   ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED:**

1. Defendant Susan Stedman's Motion to Dismiss Plaintiff BMO's Amended Complaint [Dkt. No. 51] is **GRANTED;**

2. Defendant Kenneth Kuskie's Motion to Dismiss Plaintiff BMO's Amended Complaint [Dkt. No. 61] is **GRANTED;**

3. Defendant John Stedman's Motion to Dismiss Plaintiff BMO's Amended Complaint [Dkt. No. 76] is **GRANTED;**

4. Defendant Susan Stedman's Motion to Dismiss Co-Defendant Hayes's Amended Crossclaims [Dkt. No. 56] is **GRANTED;**

5.   Defendant Kenneth Kuskie's Motion to Dismiss Co-Defendant Hayes's Amended Crossclaims [Dkt. No. 66] is **GRANTED;**

6.   Defendant John Stedman's Motion to Dismiss Co-Defendant Hayes's Amended Crossclaims [Dkt. No. 80] is **GRANTED;** and

7.   Third-Party Defendant Capitol Sales' Motion to Dismiss Third-Party Plaintiff Hayes's Complaint [Dkt. No. 71] is **DENIED**.

8.   Counts I-IX (fraudulent transfer claims against the shareholders) in BMO's amended complaint are **DISMISSED with prejudice.**  Count X (breach of fiduciary duty against the shareholders) is **DISMISSED with prejudice** to the extent it is based on their status as shareholders and **DISMISSED without prejudice** to the extent it is based on their status as officers or directors**.**

9.   Crossclaims I–II (indemnification and advancement against the shareholders) are **DISMISSED without prejudice.**

The claims that remain are Count X (breach of fiduciary duty against Mr. Hayes) and Counts XI–XVI (fraudulent transfers, fraud, conversion, and civil theft claims against Mr. Hayes) in BMO's complaint and Count I in Mr. Hayes's amended third-party complaint (indemnification and advancement against Capitol Sales).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 4, 2023

_s/Katherine Menendez_

Katherine Menendez
United States District Judge